[No. 28895.    Department One.    April 28, 1943.]

M. V. Foss, *Appellant,* v. R. G. Culbertson *et al.,*
*Respondents and Cross-appellants.*[1]

[1]Reported in 136 P. (2d) 711.

*William A. Gilmore,* and *W. H. Cook,* for appellant.

*Case & Laube* and *Patrick A. Geraghty,* for respondent and cross-appellant.

JEFFERS, J.—This action was instituted in the superior court for King county by W. V. Foss, who claimed to be doing business under the assumed names of University Transfer Company, University Transfer and Storage Company, and University Moving and Storage Company, for the purpose of obtaining an injunction restraining defendants R. G. Culbertson and Seattle Terminals Company, Inc., a corporation, from using the word "University" in connection with their transfer, moving, storage, or warehouse business, either by signs, letters, or advertising, or using the trade name University in any manner whatsoever in connection with the transfer, moving, storage, or warehouse business in the city of Seattle, and restraining defendant Pacific Telephone & Telegraph Company from publishing in its telephone directories any such names.

The cause came on for hearing before the court upon the issues raised by plaintiff's complaint, the answer of defendants Culbertson and Seattle Terminals Company, Inc., and the separate answer of the telephone company. On April 18, 1942, the trial court filed a memorandum opinion, and, on June 5th following, signed findings of fact, conclusions of law, and judgment, which were filed on June 6, 1942.

The evidence shows the following facts: In 1920, plaintiff entered the transfer and baggage business in Seattle, on Corliss avenue, under the name King Auto Transfer, and continued to so operate at this location until 1932, when he moved his office to the 4100 block on University way. The business was what Mr. Foss termed a transfer business, and he used three trucks.

Mr. Foss continued in this location for about three months, when he moved his office to 4124 Roosevelt way, where he continued to operate until 1935, at which time he formed a partnership with George W. Wilcox, who then was operating a transfer business under the name University Transfer Company.

After the partnership was formed, the business was moved to 4301 University way, where it was operated under the names University Transfer Company, University Transfer & Storage Company, University Moving & Storage Company, and King Auto Transfer. This partnership continued for two years, when Mr. Foss bought the interest of Mr. Wilcox in the business, including the good will and trade names.

Mr. Foss testified that he continued to operate the business under all of the trade names at 4301 University way, up to 1937-38; that, on November 18, 1937, he filed with the clerk of King county a list of the trade names under which he was operating, these being University Transfer Company, University Transfer & Storage Company, and University Moving & Storage Company; that, at the time of filing the trade names, he was in the business of moving furniture and baggage, general hauling, and storage.

Plaintiff subsequently moved to 1409 east Forty-second street, where his office now is.

George W. Wilcox, hereinbefore referred to, testified that in 1935 he purchased from Charles Walsh the University Transfer Company, which included the University Transfer & Storage Company and University Moving & Storage Company; that he operated under the name of University Transfer Company; and that he had a moving and storage business, although he owned no warehouse. He further testified that he sold his interest in the business to Mr. Foss in December, 1937; that the sale to Mr. Foss included all the rights

he had acquired from Mr. Walsh in the University Transfer Company and the other two trade names, including good will.

Charles M. Walsh, from whom Mr. Wilcox purchased the University Transfer Company, testified that he purchased the business from a Mr. Bailey, who had purchased it from a Mr. Jensen, and that Jensen started the business in about 1905. Mr. Walsh further testified that he operated under three names, University Transfer Company, University Transfer & Storage Company, and University Moving & Storage Company, and had filed these assumed names with the county clerk; that he operated under these names from 1921 to 1935, when he sold to Mr. Wilcox; that during his operations he spent considerable money in advertising the business and building up good will; that one of the methods used in advertising the business was the preparation and distribution of thousands of pamphlets; that he also advertised in the Tribune and Northwest Progress, and the university papers; that he advertised continuously in the newspapers, the purpose of such advertising being to acquaint people in the community with the name of his business. Mr. Walsh had the name University Transfer & Storage Company on his van.

(It thus appears that, in 1937, when Mr. Foss purchased from Mr. Wilcox the latter's interest in the University Transfer Company, Mr. Foss acquired all the interest Mr. Wilcox had acquired from Mr. Walsh in the University Transfer Company, the trade names University Transfer & Storage Company and University Moving & Storage Company, and whatever good will there may have been in connection with these names in the community.)

While it appears that at one time Mr. Foss had a small place used for storage, it does not appear that

since 1937 he has had a storage warehouse, or has been in the storage or warehouse business. He did, however, have an arrangement with at least two warehouse companies, whereby goods which he hauled could be stored in their warehouses. The receipt for the goods so stored was issued to the owner, and Mr. Foss received as commission from the warehouse company the first month's storage charge.

██ It is admitted that Mr. Foss does not now have, and that he has never had, a license to operate a warehouse, as required by Rem. Rev. Stat. (Sup.), § 11569-1 [P. C. § 7202-21] *et seq.* The warehouse act is a comprehensive act and, among other provisions, it requires that every warehouseman shall obtain a license to operate a warehouse. It provides for filing a schedule of rates and for inspection and supervision by the department of public service. Section 11569-8 [P. C. § 7202-28] provides in part:

"Any person not a licensed warehouseman under, or excepted from the provisions of this act, who shall display on any building, vehicle, billboard or in any other manner, any advertisement of, or by circular, letter, newspaper, magazine, poster, or card to advertise, storage of property shall be guilty of a misdemeanor and punishable as such."

Leon Herkenrath, called by defendant, testified that he was a warehouse inspector and field agent for the. department of public service, which position he had held since 1935; that the department considered warehouse companies and transfer companies separate businesses, and had promulgated different rules covering each business. This witness further testified that complaint had been made that Mr. Foss was doing a storage business without a license, and that he called on Mr. Foss and found he had a small amount of household goods in storage. The inspector ordered Mr. Foss

to get rid of the goods he had in storage, and discontinue that type of operations, and that was the extent of the difficulty, as far as storage business was concerned.

While R. G. Culbertson and Pacific Telephone & Telegraph Company are named as defendants in this action, our reference hereinafter to the defendant shall be deemed to be Seattle Terminals Company, unless otherwise specifically mentioned.

It does not appear that, subsequent to 1937, plaintiff has used, on his trucks or on the window of his office or in the Seattle telephone directory, any name other than University Transfer, which appeared on his trucks, and University Transfer Company, which appeared on the window of his office and in the telephone directory, until some time after defendant had begun to use the name University in connection with its moving and storage business, at which time plaintiff caused to be placed on the window of his office, under University Transfer Company, the names University Transfer & Storage Company and University Moving & Storage Company.

The testimony of Mr. Foss shows that there has been some confusion as the result of defendant's use of the word University in connection with its business; that calls came into plaintiff's office intended for defendant; that plaintiff received calls from people in regard to damage to goods claimed to have been hauled by plaintiff, when plaintiff had never hauled the goods; that plaintiff had received checks for services not performed by him; that, on at least two occasions, the trucks of both plaintiff and defendant appeared at the same place at the same time, to do a moving job; and that defendant obtained work which should have come to plaintiff, because people who plaintiff knew had

been moved, when asked who moved them said, "University Transfer."

It also appears that, in the Seattle telephone directory, on page 269, defendant had inserted, above plaintiff's name University Transfer Company, the name University Moving & Storage Co. (in large letters), University Warehouse (in small letters), 1017 E. 40th, Evergrn 0350, and University Storage & Moving Co. (in large letters), University Warehouse (in small letters), 1017 E. 40th, Evergrn 0350; also, just below plaintiff's name, the name University Transit Co. (in large letters), University Warehouse (in small letters), 1017 E. 40th, Evergrn 0350. It may be admitted that these names appear in the directory in alphabetical order, but it is evident that in none of them does defendant refer to its real corporate name. The testimony and exhibits also show that on defendant's trucks and vans the name University is displayed in large letters over the word Warehouse or Warehouses. The testimony shows that plaintiff's business was obtained almost entirely by telephone; that is to say, people desiring to have hauling done would call plaintiff on the telephone, while defendant obtained the greater part of its business by personal calls.

The evidence shows that R. G. Culbertson owns about eighty per cent of the stock of defendant corporation, and is the manager and in control of the business; that he came to Seattle about five years ago to become the manager of Eyres Transfer & Warehouse Company; that, in December, 1939, the name of the above mentioned company was changed to Seattle Terminals University Warehouse, Inc., which is the real corporate name of defendant.

Mr. Foss testified that in January, 1940, he notified defendant by letter of his trade names.

An attempt was made to show that defendant was

not really in competition with plaintiff, in that defendant did not attempt to obtain such business as hauling baggage and trunks for students and others. Mr. Culbertson testified that the volume of transfer and baggage business was almost nothing; that his company never used the name University Transfer in connection with its operations; that his company was not engaged in the transfer business, as he understood the meaning of that term. Mr. Culbertson admitted that the corporate name of his company did not appear in the telephone directory.

However, it appears conclusively that defendant was in the transfer and moving business, as well as the warehouse business. Clifford Cambern, who at the time of trial was traffic manager for defendant, testified that he had formerly been sales manager, and when asked what his duties were as sales manager, answered:

"To pick up business, get live prospects or suspects and obtain different types of business, moving, shipping, crating, storing household goods."

He further testified that he kept a series of cards representing his personal calls, sometimes three or four calls from the same person, recording and including the statements which he felt necessary in the course of the business, such as information pertaining to competitors on the job, a competitor's estimate of the job, what he (the witness) thought the job would run, what his services were, etc.

It further appears that defendant's trucks and vans have a distinctive color, and that the color of those trucks and the letters thereon are entirely different from the color and lettering on plaintiff's trucks.

Defendant's witnesses testified they knew of no confusion which has resulted because of the names used

by defendant, at least no confusion as between its business and that of plaintiff, except possibly on one or two occasions.

Mr. Culbertson denied that he had attempted to injure plaintiff in any way, or that he had attempted to mislead the public, to plaintiff's prejudice, by the names used or in the manner of advertising; that no objection had been made to the filing of the corporate name of defendant, and that he was of the opinion defendant had an absolute right to use the name University in connection with its storage business.

While defendant has several warehouses in Seattle, the one in the university district is only a short distance from plaintiff's office.

The trial court found that the true corporate name of defendant is Seattle Terminals University Warehouse, Inc.; that the corporation was organized in December, 1939, and ever since has been conducting a transfer, storage, and warehouse business, at 1017 east Fortieth street, in the university district of Seattle; that, during the years 1940 and 1941, defendant used, and is now using, in its business several trucks and moving vans of a distinctive and standard painting, the main portion of the trucks being a certain shade of yellow, with lettering predominately displayed in green; that upon one of the trucks or vans the word University appears in large letters, with no other words, and on several of them the word University appears in large letters with the words Seattle Terminals placed thereon in small letters; that, upon defendant's warehouse at 1017 east Fortieth street, the words University Warehouse appear in very large letters, with the words Seattle Terminals Company in small letters; that plaintiff, through his attorneys, in January, 1940, by letter notified defendant of his claimed trade names.

The court further found that, about the month of November, 1941, in order to appropriate the names and business of plaintiff, defendant caused to be inserted in the Seattle telephone directory, and the telephone company printed, the names University Transit Co., University Moving & Storage Co., and University Storage & Moving Co., these names being inserted in the directory above and below plaintiff's name, University Transfer Co.

The court further found that plaintiff, for many years last past, and up to the time of trial, has had a licensed transfer business for moving and transferring household goods, baggage, and other freight, and has been doing business under the trade name of University Transfer Company, using that name on his office signs and advertising during many years last past; that in his business under that name he has acquired a good will, and the name has been quite well known to patrons and customers generally desiring such service in the university district; that plaintiff has never been licensed to conduct a storage or warehouse business under Rem. Rev. Stat. (Sup.), §§ 11569-1, 11569-6, 11569-8 [P. C. §§ 7202-21, 7202-26, 7202-28]; and that plaintiff is not entitled to use the words storage or warehouse in connection with his transfer and moving business.

The court further found that defendant's acts in advertising in the telephone directory and on trucks and vans, so far as concerns the use of the name University in connection with the words transfer, moving, hauling, transit, or any similar name, encroach and infringe upon plaintiff's right to the use of those words in connection with the name University, and injure him in his business and good will; that, by the use of such words, defendant deceives and confuses the public, to plaintiff's irreparable damage; that the use of any of

such names by defendant, in connection with the word University constitutes unfair competition, and is wrongful; that defendant is entitled to the use of the word University in connection with the words storage or warehouse, in reference to its business.

Conclusions of law, based on the findings, were made and entered, as was also the following judgment:

"It is therefore ORDERED, ADJUDGED and DECREED that the defendant, Seattle Terminals University Warehouse, Inc., shall be, and it is hereby enjoined from the use of the name 'University Transit Co.' in connection with the operation of its business, or from using a name in which the word 'moving,' 'hauling,' or 'transfer' is used in connection with the word 'University.'

"It is further ORDERED, ADJUDGED and DECREED that the defendant, Pacific Telephone & Telegraph Company, a corporation, be and it is hereby enjoined from listing the defendant, Seattle Terminals University Warehouse, Inc., under the assumed name of 'University Transit Co.' or under any other name in which the word 'moving,' 'hauling,' or 'transfer' is used in connection with the word 'University' in any phone directory hereafter published by the said Pacific Telephone & Telegraph Company subsequent to the date hereof and as long as the plaintiff, M. V. Foss, is continuously doing business under the name of 'University Transfer Co.'

"It is further ORDERED, ADJUDGED and DECREED that the defendants are entitled to the use of the name 'University' in connection with 'storage' or 'warehouse' in connection with their business.

"It is further ORDERED, ADJUDGED and DECREED that the action of the plaintiff against the defendant, R. G. Culbertson, be and it is hereby dismissed."

Plaintiff has appealed from the judgment entered, and defendants Culbertson and Seattle Terminals University Warehouse, Inc., have cross-appealed. The telephone company did not appeal. In view of the fact that both sides have appealed, we shall continue to use

the terms plaintiff and defendant, in referring to the contentions made by the parties to this appeal.

Plaintiff contends the court erred in not enjoining defendant from using the word University in connection with its storage and warehouse business in Seattle; in holding that defendant is entitled to use the word University in connection with its storage and warehouse business; in refusing plaintiff injunctive relief in protecting his descriptive trade name University against defendant as competitor; in not enjoining defendant Seattle Terminals University Warehouse, Inc., from using the word University in its corporate name; and in dismissing the action as to R. G. Culbertson.

Defendant contends the court erred in enjoining it from using any name in which the words moving, hauling, or transfer, are used in connection with the word University, in its business. Defendant makes no contention that it had a right to use the name University Transit Company.

Plaintiff further contends that, under the evidence, and even under the court's findings, he was entitled to a sweeping injunction enjoining defendant, as his competitor, from using the descriptive trade name University on its trucks, vans, or buildings, or in the telephone directory, or in its corporate name; that the court seemed to have taken the position that a storage or warehouse business was as independent from a transfer business as "a church," "a school," or a "beauty parlor," and completely overlooked the fact that the evidence and the findings themselves show that defendant was conducting a rival and competitive transfer business by the use of the descriptive name University on its trucks, vans, and warehouse.

Plaintiff also contends that it is immaterial whether or not he had a warehouse license; that there never

was an abandonment by plaintiff of the trade names University Transfer & Storage Company and University Moving & Storage Company.

Defendant argues that, as plaintiff had no license to operate a warehouse, and because of the prohibition contained in the warehouse act, plaintiff had no right to use the words storage or warehouse in his trade name or names; that, as plaintiff, since 1937, had not used any trade name other than University Transfer Company, he must be held to have abandoned the trade names containing the words storage or warehouse; and that, plaintiff having abandoned the use of those words, defendant had a right to appropriate the word University in connection with its storage and warehouse business. Defendant further contends that plaintiff failed to show there had been any material confusion, and therefore should have been denied any relief herein.

The basis of this type of action is unfair competition. It is evident that no inflexible rule or set of rules can be laid down as to just what conduct will constitute unfair competition. Whether or not there was unfair competition is a question of fact, and, this being so, each case is in a measure a law unto itself. *Olympia Brewing Co. v. Northwest Brewing Co.*, 178 Wash. 533, 35 P. (2d) 104.

We have had before us many cases involving this general question. The factual situations presented have, as might be expected, differed in each case. However, from these cases it is evident that we have recognized that there are certain well-established rules to be considered in connection with this type of case.

In the late case of *Seattle etc. Ass'n v. Amalgamated Ass'n, etc.*, 3 Wn. (2d) 520, 101 P. (2d) 338, this court, after a very exhaustive study of our cases, announced that there were eight general rules which might be deduced. The opinion then proceeds to set out these

different rules, citing our cases which sustain each one. In order that we may have these rules before us in considering this case, we again state the following rules as applicable to this type of case.

■ First: The right to use a particular name as a trade name belongs to the one who first appropriates and uses it in connection with a particular business. This rule is basic, and is supported by all the cases cited in the above case.

■ Second: A person, whether individual or corporate, may not use any name, not even his or its own, which is the distinctive feature of a trade name already in use by another, if such use by the one person tends to confuse, in the public mind, the business of such person with that of the other. We cite the following as typical cases: *Martell v. St. Francis Hotel Co.,* 51 Wash. 375, 98 Pac. 1116; *Wright Restaurant Co. v. Seattle Restaurant Co.,* 67 Wash. 690, 122 Pac. 348 (this case presented only facts as shown by the complaint, a demurrer to the complaint having been sustained in the lower court and the action dismissed); *Queen Anne Candy Co. v. Woolworth Co.,* 165 Wash. 143, 4 P. (2d) 844.

■ Third: The prior user may be entitled to relief regardless of actual fraud or intent to deceive on the part of a subsequent appropriator.

■ Fourth: To acquire the right to use a particular name, it is not necessary that the name be used for any considerable length of time. It is enough to show that one was in the actual use of it before it was begun to be used by another. *Rosenburg v. Fremont Undertaking Co.,* 63 Wash. 52, 114 Pac. 886.

■ Fifth: A trade name may be abandoned or given up by the original appropriator, and, when it is so abandoned or given up, any other person has the right to seize upon it immediately, and make use of it,

and thus acquire a right to it superior not only to the right of the original user, but of all the world. *Rosenburg v. Fremont Undertaking Co., supra.*

Sixth: A trade name, in order to be an infringement upon another, need not be exactly like it in form and sound. It is enough if the one so resembles another as to deceive or mislead persons of ordinary caution into the belief that they are dealing with the one concern when in fact they are dealing with the other. *Rosenburg v. Fremont Undertaking Co., supra; Electric Supply Co. v. Hess,* 139 Wash. 20, 245 Pac. 27.

Seventh: The rule is no different when the name, or some part thereof, is a geographical name, or contains descriptive words which have acquired a secondary meaning.

(In the case of *Electric Supply Co. v. Hess, supra,* we quoted from Nims, Unfair Competition and Trade Marks (2d ed.), p. 67, § 37: " 'Secondary meaning is *association,* nothing more.' " We then stated:

"That is, that the words, though primarily belonging to the public, have been associated with one's business in such way and for such length of time that they are generally understood by the public as referring to that one's business.")

Eighth: Prior right to the use of a name will be protected by injunction against others using it unfairly.

It is apparent in this case that the distinctive word in all of plaintiff's claimed trade names is "University." It is reasonable to assume it has particular significance in that part of Seattle known as the university district. There is no question but that plaintiff and his predecessors in business, whose rights plaintiff acquired, had used the trade names, University Transfer Company, University Transfer & Storage Company, and University Moving & Storage Company,

in connection with the transfer business in Seattle, for many years before defendant was incorporated under its present name, and long before defendant began to use the word University in connection with either its storage or transfer business. From an examination of all the evidence, we are satisfied that the word University had acquired a secondary meaning in connection with the various trade names used by plaintiff and his predecessors in the transfer business.

While perhaps in this case it was not shown that as much confusion had resulted from the use by defendant of the word University in connection with its business as in some other cases, we are of the opinion the court was justified in finding that the public was deceived, and that the use of the word University, as used by defendant in connection with its business, constituted unfair competition as against plaintiff.

Therefore, after considering the rules above stated, the cases cited, and all the evidence in this case, we have no hesitancy in holding that the trial court was justified in finding that plaintiff, by its prior use of the name University Transfer Company, had appropriated and acquired the prior right to the use of the word University in connection with its transfer and moving business, and that defendant, in order to appropriate the names and business of plaintiff, had caused the names hereinbefore referred to, in which the word University was the prominent word, to be inserted in the Seattle telephone directory, and to be used on its trucks and vans. The trial court, therefore, was warranted in granting to plaintiff the injunctive relief which it did.

A more difficult question is presented by plaintiff's contention that the court erred in failing to enjoin defendant from using the word University in connec-

tion with the words storage or warehouse, and in its corporate name.

It is true that plaintiff's predecessors and plaintiff himself used the three trade names to some extent, although it is apparent that, at least during the time Mr. Wilcox operated the University Transfer Company, during his partnership with plaintiff, and since plaintiff acquired the business, the principal name used was University Transfer Company. However, it does not appear that, since the time plaintiff filed his claimed trade names in November, 1937, plaintiff has in fact used any name other than University Transfer Company. This name was on his trucks, on the window of his office, and in the telephone directory. It is true that, sometime in 1941, plaintiff caused to be placed on the window of his office, under the name University Transfer Company, the other two trade names claimed by him.

It may, to some extent, be a surmise as to why plaintiff, since 1937, has used in his business no name in which the words storage or warehouse appeared, but when we consider the effect of the warehouse act and the testimony of Mr. Herkenrath in connection with plaintiff's business, and the failure of plaintiff to use any name other than University Transfer Company, it would seem to be apparent that he had abandoned the trade names in which the words warehouse or storage appeared.

We are of the opinion that the statute providing for the filing of trade names has nothing to do with the acquiring of such assumed names. The filing of assumed names only affects the right of the party doing business under such names to sue in the courts of this state. *Union Trust Co. v. Quigley,* 145 Wash. 176, 259 Pac. 28.

It may be conceded, as contended by plaintiff, that a trade name is not necessarily abandoned by disuse. We have so held in *Olympia Brewing Co. v. Northwest Brewing Co., supra,* where the disuse of a trade name for several years was occasioned by a statutory restriction on the sale of liquor, and in *Washington Barber etc. Co. v. Spokane etc. Co.,* 171 Wash. 428, ·18 P. (2d) 499, where we held the Spokane Barber Supply Company had a superior right to the use of that name until the corporation became bankrupt in 1928, and that the trade name was not abandoned, but was passed to the trustee in bankruptcy, as an asset of the bankrupt estate.

It may also be conceded that it must appear there was an intent to abandon the trade name, but necessarily intent, unless admitted, can be shown only by the acts of the party and the reasonable inferences to be drawn therefrom. In this case, it seems to us the acts of plaintiff, when considered in connection with the other facts, show an intent to abandon those trade names in which the words storage or warehouse appear.

One of the main factors entering into the right of one claiming a trade name to use it to the exclusion of others in a competitive business, is the *use* of such name, and it does not appear to us that one should be permitted indefinitely to claim the right to a trade name when it is not used and could not legally be used.

If defendant were in the warehouse business only, assuming that such business is a business distinct from the transfer business, it would not be difficult to agree with the trial court that defendant had a right to use, in reference to its business, the word University in connection with the words storage or warehouse, but it must be borne in mind that defendant is also in the moving and transfer business, and that on its

vans and trucks and in the telephone directory it has prominently displayed the word University in connection with its moving and storage operations, and undoubtedly will continue to so use the word University in connection with its operations, limited to storage and warehousing, and, under the judgment entered, defendant may continue as it has in the past to display the word University as the prominent word.

In view of the facts as established in this case, we are of the opinion that to permit defendant to use the word University on its vans and trucks and in the telephone directory as it has in the past, in so far as that word is used in connection with the words storage and warehouse, would be an infringement on plaintiff's trade name of University Transfer Company, and would be misleading to the public. While the warehouse business and the transfer business may be separate and distinct, yet when the public sees, as it has in the past, the word University on the vans of defendant, even though used in connection with the words warehouse or storage, we are satisfied that the ordinary prudent person would not distinguish between the name University Transfer Company and the names University Warehouse Company or University Storage Company. In fact, the conflict which has existed must have been caused to a great extent by the use of those very words, as defendant has never used the word *transfer* in connection with the word University in its business.

We are therefore of the opinion that the trial court should, in addition to the injunctive relief granted to plaintiff, also have enjoined defendant from using the word University in connection with the words storage and warehouse, in the manner in which they have been used, at least so long as defendant operates a mov-

ing and transfer business as well as a storage and warehouse business.

However, we do not feel justified in enjoining defendant from using the word University in connection with its full corporate name, and we are therefore of the opinion that defendant is entitled to use the word University on its vans and trucks, on its warehouse, and in its advertisements, in connection with its full corporate name, no more prominence to be given to the word University than to the other words in the name.

We have considered plaintiff's contention that the court erred in dismissing defendant Culbertson, and find no merit therein.

As modified by this opinion, the judgment of the trial court will be affirmed on plaintiff's appeal, and, as modified on plaintiff's appeal, the judgment will be affirmed on defendant's cross-appeal. The judgment against Seattle Terminals University Warehouse, Inc., as modified herein, will, of course, also modify the judgment against the Pacific Telephone & Telegraph Company. Plaintiff will recover costs in this court.

SIMPSON, C. J., MILLARD, STEINERT, and MALLERY, JJ., concur.