[No. 32202.   Department Two.   January 15, 1953.]

HALLIE C. GRAHAM, *Respondent,* v. JOHN GRAHAM, *Appellant.*[1]

*Wright, Booth & Beresford* and *Jones, Birdseye & Grey,* for appellant.

*Tanner, Garvin & Ashley,* for respondent.

FINLEY, J.—Defendant appeals from an order of the superior court for Kitsap county correcting an error in a divorce decree.  Different aspects of this case have been before us on three occasions.  In *Graham v. Graham,* 38 Wn. (2d) 796, 232 P. (2d) 100, we decided the case on its merits and affirmed a decree of the trial court making a division of the parties' property and awarding them a divorce.  Subsequently, we denied a petition for rehearing in the same case.  Hereinafter, we shall refer to the original appeal as cause No. 31585, the number given the cause when it was first before us.  In cause No. 32029, we denied, without opinion, appellant's application for a writ of prohibition to restrain the trial court from correcting the error which is the subject of the present dispute.

The facts relevant to the present appeal, in chronological order, are as follows:  In cause No. 31585, after a trial, the

[1]Reported in 252 P. (2d) 313.

superior court for Kitsap county awarded the parties a divorce and made a division of their property. In his memorandum opinion dated January 19, 1950, the trial court indicated, with respect to the property division he would ultimately make, that a certain account receivable was to be awarded to the plaintiff wife. The material portion of this memorandum opinion, bearing on what was to be awarded the wife, is as follows:

"The plaintiff will be awarded the Mercer Island Property, subject to the mortgage, *the account receivable from the Virginia Mason Hospital in the amount of $5,488.00* and stock in the amount of $30,000. She also has, and will continue to receive, the benefits from Jack's agreement of the valuation of $10,545.00. This results in vesting in her, property of a net valuation of $69,433.00, or slightly more than 40 per cent of the total net valuation of the community property. The plaintiff should also be given the painting, books, and cake basket which she particularly desires. In addition to this, she has separate property of the estimated value of $12,000, *giving her a total estate of $81,433.00.*" (Italics ours.)

The property division initially made in the memorandum opinion was subsequently confirmed by a supplemental memorandum opinion of February 28, 1950.

After the trial and the memorandum opinions, the Virginia Mason account receivable, for some unaccountable reason, was paid over to the defendant husband, and he added the payment to his general funds. On March 19, 1950 (the day before fact findings and conclusions of law were signed), the appellant made an affidavit, the substance of which was as to the hardship the proposed property division would work on him. Apparently this affidavit was made in the hope the trial court would revise, in appellant's favor, the property division decided upon or indicated by the two memorandum opinions. In his affidavit, appellant did acknowledge that the Virginia Mason account receivable had been paid over to him and hence, strictly speaking, was no longer an *account receivable* but an *account received*. He also stated that this item had been added to his general funds, but he did not state the extent

of his funds, nor did he state the amount of a "personal fund" to which he referred in the affidavit. He showed his affidavit to the trial judge and caused the following endorsement to be put on it:

"This affidavit was presented to and considered by the Court prior to the signing of the Findings of Fact, Conclusions of Law and Decree herein."

The endorsement is dated March 20, 1950, and signed by the trial judge who heard the case and rendered the memorandum opinions and the decree in cause No. 31585.

Findings of fact and conclusions were made on March 20, 1950. They still referred to the disputed account as an "account receivable" rather than an "account received." The relevant fact finding is as follows:

"6. . . . These items should be set over unto the plaintiff: . . .
"(b) The account receivable from Virginia Mason Hospital in Seattle in the amount of $5,488.00, with accumulated interest if any there be."

The same reference to the "account receivable" appears in the property division contained in the decree of divorce.

Appellant took an appeal from this property division, his theory throughout being that the award made to the respondent wife was excessive in amount. *At no time whatsoever, on the original appeal, did he give any indication that he thought the character of the account receivable had been changed by the fact it had been paid over. On the contrary, at all times during the original appeal, and on his petition for rehearing, he treated that account as one owing to the plaintiff.* In his briefs and in argument before this court, he included the sum of the account receivable in the total amount which had been awarded the respondent, in order to support his principal theory that the award to respondent wife was excessive. In his opening briefs in cause No. 31585, four references were made to the sum of $81,-432.64 (which sum included the Virginia Mason account receivable). In his petition for rehearing, after we had decided the case on its merits and affirmed the property

division, he again referred to this same sum of $81,432.64. Neither in his oral arguments nor in his briefs did he intimate that the fact that the account had been received by him ended his obligation to pay it to respondent.

After cause No. 31585 went down on remittitur, appellant then, for the first time, contended that he was not obligated to pay over the Virginia Mason account receivable to respondent. His theory or assumption apparently was that, since the trial judge knew that appellant had received the account before the fact findings were made, he must have intended that appellant did not have to pay the amount of the account receivable to respondent wife. Apparently appellant also assumed that the literal wording of the decree, "account receivable," ended his obligation to pay, since the account was now an "account received."

Later, in December, 1951, respondent, by her counsel, made a motion to correct the clerical error in the judgment to make it conform more clearly to the intention of the court. This motion was accompanied by an affidavit of respondent's counsel, setting forth the facts recited above. After a hearing on the matter (at which appellant made a special appearance, and at which appellant contended that the court could not then correct the judgment), the trial judge rendered a memorandum opinion in which he indicated his intent to correct the judgment. The pertinent portions of that memorandum opinion, which express the views of the trial judge, are as follows:

"It is obvious, however, that no significance was attached to the fact that the character of this particular property had been changed, and the money received. It would now appear that the defendant, through his earlier affidavit, only attempted to prepare a position to which he now wishes to retreat. However, since that time, this case has been heard on appeal in the Supreme Court, and throughout the proceedings on appeal, this question has been permitted to lie dormant and both parties have repeatedly referred to the total values of the property awarded to the parties, which include the item now in dispute, and it must necessarily be presumed that the defendant regarded this amount as having been awarded to the plaintiff. . . This

question was not raised before the Supreme Court, which affirmed the judgment of this Court, and for the first time it is now urged by the defendant that the judgment entered gave the plaintiff absolutely nothing in so far as this account is concerned.

". . . I think it can well be said that the wording of the judgment is a clerical error because it referred to this account as an 'account receivable' when, in fact, it was an 'account received.' There was just one thing the Court had in mind at the time of signing of the judgment, and this was clearly known and understood by all parties concerned. It was that of the total award to the plaintiff, $5,488.00, representing this particular account, was to be included."

After the trial court had indicated what its decision would be, the appellant applied for a writ of prohibition to restrain the trial court from exceeding its jurisdiction in correcting the error. We denied that writ, without opinion, in cause No. 32029, docket entry, book 10, p. 77. In his briefs in the prohibition case, appellant made substantially the same contentions he now urges here.

Subsequently, on February 21, 1952, the trial court made an order in respect to its original judgment, correcting the error. That order, which forms the basis for this appeal, is as follows:

"Now, THEREFORE, in conformity therewith, IT IS ORDERED that paragraph 2 (b) of the decree of divorce entered herein March 20, 1950, be corrected to read:

" '2. There is hereby set over unto the plaintiff as her sole and separate property the following:

" '(b) The *account received* from Virginia Mason Hospital, in Seattle, in the amount of $5,488, with accumulated interest, if any there be.' " (Italics ours.)

The court then ordered the entry of a personal judgment against appellant in that amount.

Appellant has cited numerous authorities to the effect that where an error in the entry of a judgment is a judicial error it cannot be subsequently corrected, since the policy in favor of the stability of judgments demands judgments not be tampered with after entry. However, appellant concedes that clerical errors in the entry of judgments can be corrected. The respondent relies on the fact that the error

committed here is a clerical error, and distinguishes most of the authorities cited by appellant. Because of the view we take of this matter, it is unnecessary to cite or discuss these authorities or to pass on the question of whether the trial court committed a judicial or clerical error, for we are of the opinion that the order of the trial court must be affirmed on another ground.

The appellant, by his conduct and statements before this court, has estopped himself from claiming any right to relief in respect of the alleged clerical or judicial error in the judgment. Throughout the proceedings before this court, both in the original appeal and on petition for rehearing, appellant did not utter a single, solitary word to indicate the position he ultimately took in the trial court after the remittitur went down. All through the appellate proceedings, he affirmatively treated the Virginia Mason account receivable as the property of the respondent wife. As we have shown, all of his statements were to the effect that the trial court had awarded that amount to respondent, and *that this was one of the reasons why the award was excessive.* He constantly included the amount of the Virginia Mason account receivable in the total amount of the award which he claimed was excessive. In the original appeal and on petition for rehearing, we relied on the statements of the parties as they appeared in the briefs, and on whatever theories, expressed or implied, that were to be drawn therefrom. For the simple reason that appellant, himself, led us into our error—if there be any error—he cannot now contend that he is not obligated to pay the amount of the Virginia Mason account receivable. Our affirmance of the property division was on the theory that the division was just to both parties. Had we known at that time that appellant would make the claim he did not have to pay the account receivable, we could have taken appropriate action then.

It is difficult to fit the present contentions of appellant into any of the traditional rules which state that a case must be reviewed on the same theory upon which it was tried in

the trial court; or that a party is estopped to raise a new theory of action or to urge new errors on appeal not advanced in the trial court. This is because the inconsistent stand of the appellant here occurred after remittitur. We do not have the ordinary situation of one taking a position on appellate review inconsistent with that he took in the trial court.

But we believe a sound analogy can be drawn from the doctrine of invited error which arises as one phase of estoppel or waiver of a right to take a position inconsistent with that initially taken. It has been said, that

"The rule is well settled that a party cannot successfully complain of error for which he is himself responsible or of rulings which he has invited the trial court to make." 3 Am. Jur. 427, § 876.

Though this rule ordinarily applies to error invited by one's own conduct in a trial court, there is no reason why the same principle is not applicable here—appellant has so clearly induced the error of which he now complains, that he is estopped to raise it. Having failed to raise his contentions on the original appeal, he cannot now attempt to avoid the force of the judgment on the basis of a theory which was never urged or passed upon.

The order of the trial court is affirmed.

SCHWELLENBACH, HILL, HAMLEY, and OLSON, JJ., concur.