20 P.3d 958 (2001)
105 Wash.App. 447
Mary ETHRIDGE, a single woman, Respondent,
v.
Anna HWANG and David Hwang, wife and husband d/b/a Duvall Highlands Mobile Home Park, Appellants.
No. 44545-6-I.
Court of Appeals of Washington, Division 1.
February 12, 2001.
Reconsideration Denied March 16, 2001.
Publication Ordered March 26, 2001.
*961 Howard Goodfriend, Edwards, Sieh, Smith & Goodfriends, P.S., Seattle, for Appellants.
Dan Yung, law Offices of Dan R. Young, Seattle, for Respondent. *959
*960 WEBSTER, J.
Mary Ethridge, a tenant of a mobile home park, sued the mobile home park owner, Anna Hwang, alleging that Hwang unreasonably rejected her potential home purchasers. Ethridge prevailed following a jury trial, and Hwang appeals. Hwang argues that the trial court erred in not dismissing Ethridge's claims under the Mobile Home Landlord *962 Tenant Act ("MHLTA") and the Consumer Protection Act, and that the verdicts based on these claims were not supported by substantial evidence. Hwang also claims that the jury's finding that Hwang tortiously interfered with Ethridge's business expectancy was not supported by substantial evidence. Finally, Hwang argues that the trial court erred in awarding Ethridge attorney's fees and costs. Each contention, while strenuously argued, lacks merit. We therefore affirm.

FACTS
Mary Ethridge owned a mobile home located at space # 119 in Duvall Highlands Mobile Home Park. The park is owned by Anna Hwang. In April 1997, Ethridge sued Hwang, alleging that she attempted to sell her home to a buyer, Mr. Qualls, but that Anna Hwang unreasonably refused to permit the sale. Ethridge also alleged that she found another buyer, Ms. Cubine, but Hwang again unreasonably and wrongfully refused to approve the sale. The complaint further alleged that Ethridge had been forced to live and work in an area in which she no longer wished to live, thereby causing her emotional distress.
Ethridge alleged that this conduct violated the Mobile Home Landlord Tenant Act ("MHLTA") (RCW 59.20.010 et seq.) and constituted tortious interference with contract.
In addition, Ethridge alleged that Hwang had a widespread pattern and practice of refusing to permit the assignment of tenants' rental agreements, denying applications for tenancy in the mobile home park, and refusing to approve sales of mobile homes in the park on idiosyncratic, frivolous, unreasonable, and unlawful grounds. Ethridge alleged that Hwang engaged in these practices in the park in which Ethridge resided, and in the White River Estates Mobile Home Park, which Hwang also operated.[1] Ethridge alleged that as a proximate result of Hwang's unfair and deceptive conduct, Ethridge suffered injury to business or property and Hwang's conduct violated the Consumer Protection Act ("CPA").
Hwang moved for summary judgment and to compel arbitration. The court denied the motion for summary judgment and transferred the case to mandatory arbitration. The arbitrator ruled that Ethridge had suffered damages of $384 in lost wages as a result of Hwang's untimely rejection of the Cubine sale and that Ethridge was entitled to attorney's fees as the prevailing party in the amount of $14,277.60. Hwang appealed, requesting a trial de novo.
The jury returned a special verdict, finding that Hwang had violated the MHLTA and the CPA, and had intentionally interfered with a business relationship or expectancy, causing damage of $3,000. The jury awarded Ethridge $10,000 in additional damages for pain and suffering as a result of the intentional interference. The jury found for Hwang in the amount of $1,140 on her counterclaim for rent or other charges.
Following the jury verdict, Ethridge filed a motion for attorney's fees as the prevailing party in the litigation. The court determined that $39,585 was a reasonable lodestar fee, and then increased the lodestar fee by 25%, for a total of $49,481.25 in attorney's fees. In addition, the court awarded increased damages of $9,000 for violation of the CPA. A total judgment of $72,759.52 was entered against Hwang.
Following the verdict, Hwang filed a motion for judgment as a matter of law, or alternatively for a new trial, which was denied.
In this appeal, Hwang argues that the trial court should have dismissed Ethridge's MHLTA and CPA claims; the damages awarded were not supported by substantial evidence; Ethridge was not entitled to increased damages; the fees and costs awarded were improper, and the court erred in failing to give certain requested jury instructions. Because these arguments lack merit, we affirm.

DISCUSSION

A. Mobile Home Landlord-Tenant Act

In reviewing a summary judgment order, this court evaluates the matter de novo, performing *963 the same inquiry as the trial court. Kruse v. Hemp, 121 Wash.2d 715, 853 P.2d 1373 (1993). The appellate court considers the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c).
The MHLTA, RCW 59.20.240 provides that:
The tenant shall be current in the payment of rent including all utilities which the tenant has agreed in the rental agreement to pay before exercising any of the remedies accorded the tenant under the provisions of this chapter: PROVIDED, That this section shall not be construed as limiting the tenant's civil remedies for negligent or intentional damages: ....
The jury found that Ethridge owed Hwang $1,140 for "rent or other charges." CP 1186. Hwang argues that, under RCW 59.20.240, this finding precludes Ethridge's recovery under the MHLTA. Hwang is incorrect. Ethridge did not seek MHLTA remedies, and in any case, she was current in her rent and utilities at the time the case was filed.
The only remedies available under the MHLTA are under RCW 59.20.210 and RCW 59.20.220, and Ethridge did not seek these remedies. The plain language of the statute, especially given the proviso preserving the tenant's civil remedies, does not bar Ethridge's claim.
The summary of unpaid bills presented by the landlord (Ex. 129) does not show any unpaid charges until January 1998, nine months after the complaint was filed. Inasmuch as the statute requires the tenant to be current in rent and utilities "before" seeking remedies under the MHLTA, that requirement was met in this case.
The MHLTA also imposes a duty of good faith on tenants and landlords. RCW 59.20.020. Hwang argues that Ethridge's failure to comply with certain aspects of the assignment provisions of RCW 59.20.073 established her bad faith as a matter of law and bars her claim. This is incorrect. Failure to comply with the assignment provisions is a ground for denial of prospective purchasers, but Hwang waived the ability to object on this basis by not using Ethridge's failure to comply as the reason for her denial. See White River Estates v. Hiltbruner, 84 Wash. App. at 363, 928 P.2d 440.
In addition, Hwang argues that Ethridge's failure to comply with RCW 59.23.040, which governs the park owner's right of first refusal, establishes her bad faith as a matter of law and bars her claim. However, RCW 59.23.040 provides that the remedy for a tenant's failure to comply with that statute is that the park owner may have the sale set aside. Ethridge's failure to comply did not bar her claim. In addition, the right of first refusal is "forfeited" by a party that fails to act in good faith. RCW 59.23.010. The jury was instructed on good faith. Viewing the facts in the light most favorable to Ethridge, the jury could have reasonably found that Hwang forfeited her right of first refusal.
The jury awarded Ethridge $3,000 in "damages to her business or property" under the MHLTA. Hwang argues that this award is not supported by substantial evidence.
However, courts are reluctant to set aside a jury determination as to the amount of damages and do so rarely. See Adcox v. Children's Orthopedic Hosp., 123 Wash.2d 15, 32-33, 864 P.2d 921 (1993). The determination of the amount of damages is primarily and peculiarly within the province of the jury. Henderson v. Tyrrell, 80 Wash. App. 592, 630-632, 910 P.2d 522 (1996). A jury damage award will be overturned only in the most extraordinary circumstances. Hill v. GTE Directories Sales, 71 Wash.App. 132, 138, 856 P.2d 746 (1993).
In this case, there is substantial evidence that Ethridge suffered economic damage on the failed sale to the Qualls based on the loss of use of the sales proceeds for the 4.5 years between the wrongful interference with the sale to the Qualls and Ethridge's sale of her home. Qualls had offered to buy *964 the mobile home for $31,500 in June of 1994. Ethridge ultimately sold her home in December 1998 for $32,500. Where, as here, a landlord unreasonably withholds consent to an assignment of a mobile home lot lease, compensatory damages are properly awarded to the tenant for the delay in the sale. See Gillette v. Zakarison, 68 Wash.App. 838, 841, 846 P.2d 574 (1993).[2]
There is additional evidence that Ethridge suffered economic damage from Hwang's interference with the sale. Ethridge's second buyer, Carmen Cubine, had offered in January 1997 to buy the mobile home for $32,250. Ethridge presented evidence that Cubine was unfairly rejected as a buyer. In addition, Ethridge showed that, in reliance on Hwang's not rejecting Cubine during the statutory period, she had quit her job, packed up her belongings, and was prepared to move to Missouri to be with her mother, who had congestive heart disease and diabetes. Ethridge missed one week of work and incurred lost wages of $384.
On this record, the $3000 damage award was supported by substantial evidence.

B. Jury Instructions

Because the decision whether to give a particular instruction to the jury is a matter within the discretion of the trial court, this court reviews decisions whether to give requested instructions only for abuse of discretion. See Stiley v. Block, 130 Wash.2d 486, 498, 925 P.2d 194 (1996).
In her proposed Instruction No. 17, Hwang requested that the jury be instructed that Ethridge had the burden of proving that she complied with RCW 59.20.073. Because the MHLTA does not impose this burden of proof, this is a misstatement of the law, and it was not error for the trial court to refuse to give the instruction. See Kastanis v. Educational Employees Credit Union, 122 Wash.2d 483, 499, 859 P.2d 26, 865 P.2d 507 (1993) (not error to refuse instructions that incorrectly state the law).
In her proposed Instruction No. 19, Hwang requested that the jury be instructed that when the landlord and tenant both fail to comply with the benefits of the MHLTA, neither party may obtain the benefits of the Act. This instruction broadly overstated the holding of Moolick v. Lawson, 33 Wash.App. 665, 667, 655 P.2d 1185 (1982), and constituted a misstatement of the law. Proposed Instruction No. 19 was thus properly refused.
Hwang's proposed Instruction No. 21 instructed the jury that Ethridge had a duty to comply with RCW 59.23.035, the right of first refusal provision. However, this instruction was completely irrelevant. As noted above, Ethridge's failure to comply would not be a defense to her claims, and Hwang never refused any prospective buyers on this basis. Refusal of Instruction No. 21 was not an abuse of discretion.
Hwang also assigns error to the trial court's Instruction No. 9, which set forth the elements of Ethridge's claim under the MHLTA. Instruction No. 9 was an accurate statement of the law and giving it was not an abuse of discretion.

C.Consumer Protection Act

Hwang argues that the Consumer Protection Act does not apply to mobile home tenancies. She relies on State v. Schwab, 103 Wash.2d 542, 693 P.2d 108 (1985), which held that the CPA does not apply to residential tenancies, and argues by analogy that the CPA should be held not to apply to mobile home tenancies.
Hwang argues that Schwab should apply to the MHLTA because of similarities between the MHLTA and the Residential Landlord Tenant Act (RLTA). However, the MHLTA and RLTA are dissimilar in their provision of remedies, their purposes, and their scopes. The Legislature, in enacting the MHLTA to govern the unique case of mobile home tenancies, implicitly rejected the idea that the MHLTA and RLTA are substantially similar.
*965 Hwang further argues that the lack of explicit legislative intent to include mobile home tenancies within the CPA militates in favor of application of Schwab to the MHLTA. However, the Supreme Court has stated that the CPA "shows a carefully drafted attempt to bring within its reaches every person who conducts unfair or deceptive acts or practices in any trade or commerce." Short v. Demopolis, 103 Wash.2d 52, 60-61, 691 P.2d 163 (1984).
Finally, Hwang argues that the specificity of the MHLTA "requires" that mobile home tenancies be excluded from the CPA. However, other heavily regulated areas of trade and commerce, such as the legal profession and the banking industry, are subject to the CPA. See Meryhew v. Gillingham, 77 Wash. App. 752, 754, 893 P.2d 692 (1995), review denied, 128 Wash.2d 1012, 910 P.2d 482 (1996); Vogt v. Seattle-First National Bank, 117 Wash.2d 541, 557, 817 P.2d 1364(1991). Based on these arguments, the trial court did not err in denying Hwang's motion for summary judgment on Ethridge's CPA claims.
Hwang argues that, even if Ethridge could assert a CPA claim, substantial evidence did not support the jury's verdict. There must be "substantial evidence", as distinguished from a "mere scintilla" of evidence, to support a verdicti.e., evidence of a character "which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." Hojem v. Kelly, 93 Wash.2d 143, 145, 606 P.2d 275 (1980). A verdict cannot be founded on mere theory or speculation. Id.; accord Campbell v. ITE Imperial Corp., 107 Wash.2d 807, 817-18, 733 P.2d 969 (1987).
The elements of a CPA claim are: (1) an unfair or deceptive act or practice; (2) occurring within a trade or business; (3) affecting the public interest; (4) causing the party injury to business or property; and (5) causation between a deceptive act and a resulting injury. Hangman Ridge v. Safeco Title, 105 Wash.2d 778, 780, 719 P.2d 531 (1986).
Hwang argues that her actions were not unfair or deceptive, maintaining that she acted reasonably. Substantial evidence was presented to the contrary. Ethridge presented evidence that Hwang unfairly rejected two of her buyers, Cubine and the Qualls. In addition, former tenants and a realtor testified that they had experienced similar problems as Ethridge in selling homes in the park. From this evidence, the jury could reasonably find that Hwang acted unfairly in her rejection of proposed buyers.
Hwang further argues that her conduct did not affect the public interest, contending that the dispute between herself and Ethridge was an isolated, private transaction. Substantial evidence was presented to the contrary. The jury could reasonably find, from the testimony presented by Ethridge's witnesses as well as from Hwang's testimony, that Hwang was engaging in a pattern and practice of unfair and deceptive conduct in connection with the approval of mobile home buyers, and that that conduct would affect many members of the public.
Hwang maintains that the award of enhanced damages under the CPA, RCW 19.86.90, was an abuse of discretion. Under the abuse of discretion standard, an appellate court determines whether the trial court's exercise of discretion was based on untenable grounds, was manifestly unreasonable, or was arbitrarily exercised. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). Here, no abuse of discretion has been shown. Hwang argues that the policies that would ordinarily support an increased damage award would not be promoted by an enhanced award in this case, but her argument is fundamentally based upon a disagreement with the factual findings of the jury. Because the trial judge was in a proper position to determine whether an award of enhanced damages would be appropriate, and because no abuse of discretion has been shown, the enhanced damage award should not be disturbed on appeal.

D. Tortious Interference

Hwang argues that the jury's determination that she was liable for $10,000 in emotional distress damages for intentional interference with Ethridge's business expectancy was not supported by substantial *966 evidence. However, her argument focuses not on the evidence presented, or on the amount of damages awarded, but upon the reasonableness of her actions. The jury was instructed on her defense of reasonable justification, and found that she acted unreasonably. This finding was supported by substantial evidence. The jury was entitled to infer from the evidence presented about the Cubine and Qualls transactions, and from the testimony about the relationship between Hwang and Ethridge, that Hwang had unreasonably and intentionally interfered with Ethridge's ability to sell her home. Because this finding was supported by substantial evidence, it should not be disturbed on appeal.

E. Attorney Fees and Costs

When reviewing an award of attorney fees, the relevant inquiry is first, whether the prevailing party was entitled to attorney fees, and second, whether the award of fees is reasonable. Public Util. Dist. 1 v. International Ins. Co., 124 Wash.2d 789, 814, 881 P.2d 1020 (1994); Gossett v. Farmers Ins. Co., 82 Wash.App. 375, 387, 917 P.2d 1124 (1996). Whether a party is entitled to attorney fees is an issue of law which is reviewed de novo. Tradewell Group, Inc. v. Mavis, 71 Wash.App. 120, 126, 857 P.2d 1053 (1993). Whether the amount of fees awarded was reasonable is reviewed under an abuse of discretion standard. American Nat'l Fire Ins. Co. v. B & L Trucking & Const. Co., 82 Wash.App. 646, 669, 920 P.2d 192 (1996). A trial judge is given broad discretion in determining the reasonableness of an award, and in order to reverse that award, it must be shown that the trial court manifestly abused its discretion. Scott Fetzer Co. v. Weeks, 122 Wash.2d 141, 147, 859 P.2d 1210 (1993).
The trial court awarded Ethridge attorney fees and costs, finding that she was entitled to them "under the Consumer Protection Act and the lease, not just RCW 4.84 or pursuant to mandatory arbitration standards". Hwang does not argue that the award of fees under the CPA was error, but only assigns error to the award of fees under the lease. Because fees would be proper under the CPA, it is unnecessary to consider whether the award of fees would be proper under the lease. Even so, the fee award under the lease was correct.
The lease provided that the prevailing party in any action arising out of the lease would be entitled to attorney's fees and costs. Hwang argues that the litigation did not arise out of the lease, and so the fee provision does not apply. However, paragraph 19 of the lease, "Assignment", provides:
This Rental Agreement shall be assignable by Tenant only to a person to whom Tenant sells or transfers title to the mobile home on the Mobile Home Lot....
Ethridge's claims arose out of her ability to assign her lease under the lease agreement, and so her claims arose under the lease.
Hwang argues that the trial court erred in awarding Ethridge fees for her non-CPA claims.[3] However, the court is not required to artificially segregate time in a case, such as this one, where the claims all relate to the same fact pattern, but allege different bases for recovery. See Blair v. Washington State University, 108 Wash.2d 558, 572, 740 P.2d 1379 (1987). "Ultimately, the fee award must be reasonable in relation to the results obtained." Brand v. Department of Labor & Industries, 91 Wash.App. 280, 294, 959 P.2d 133 (1998), rev'd on other grounds, 139 Wash.2d 659, 989 P.2d 1111 (1999).
Here, Ethridge prevailed on all three theories alleged in the complaint: MHLTA, CPA, and tortious interference. Each claim involved the same core of factsHwang's unreasonable rejection of prospective buyers at the park. Proof of the tortious interference claim involved the same preparation as the other claimsestablishing that Hwang acted unreasonably. Because nearly every fact in this case related in some way to all three claims, segregation of the fee request was *967 not necessary and the trial court did not abuse its discretion in awarding fees as it did.
Moreover, Ethridge's attorney spent no time, other than drafting the complaint, solely on the tortious interference claim prior to Hwang's request for a trial de novo. All discovery done on the emotional distress issues occurred after the arbitration. Whether there was an amount of time spent on the tortious interference claim prior to arbitration was a question of fact which the trial court resolved in favor of Ethridge. Because any time spent on the tortious interference claim prior to arbitration was not spent solely on the tortious interference claim, segregation is not necessary.
The trial court upwardly adjusted the attorney fee award using a 1.25 multiplier, citing "the risk [of losing the case], the difficulty of the case, and the quality of work." Hwang argues that this was error, contending that a multiplier is not appropriate in this case, because the fee was contingent and because the work on the case was not "exceptional". However, multipliers are appropriate in contingent fee cases, Physicians Insurance Exchange v. Fisons Corp., 122 Wash.2d 299, 334, 858 P.2d 1054 (1993) (1.5 multiplier based on quality of work and contingency of case), and the trial court was in a better position than this court to evaluate the quality of the work of Ethridge's attorney on the case. Under these circumstances, and absent any other evidence of abuse of discretion, the upward adjustment of the attorney fees was not an abuse of discretion.
The trial court found that Ethridge was entitled to her costs under the CPA and the attorney fee provision in the lease, reasoning that, because Hwang had requested all out-of-pocket expenses as costs under the lease at arbitration, she had conceded that "costs" meant all out-of-pocket expenses related to the litigation. On appeal, Hwang contests the award of costs, arguing that the meaning of the word "costs" is strictly limited by RCW 4.84.010. The trial court reasonably found that the word "costs", as it appears in the lease, is properly given the meaning given to it by the parties. Since it is clear that Hwang interpreted "costs" to mean "all costs" at arbitration, the trial court did not abuse its discretion in its award of costs.

F. Attorney Fees on Appeal

Both parties have requested attorney fees on appeal. Because Hwang failed to improve her position on this appeal following her request for a trial de novo over what she obtained at arbitration, Ethridge is entitled to attorney's fees on appeal. Arment v. Kmart Corp., 79 Wash.App. 694, 700, 902 P.2d 1254 (1995).
We affirm.
GROSSE and APPELWICK, JJ., concur.
NOTES
[1] See White River Estates v. Hilt bruner, 84 Wash. App. 352, 355, 928 P.2d 440 (1996), rev'd on other grounds, 134 Wash.2d 761, 953 P.2d 796 (1998).
[2] Accord Eamiello v. Liberty Mobile Home Sales, Inc., 208 Conn. 620, 546 A.2d 805 (1988) (awarding plaintiff mobile home park tenants compensatory damages for the delay in sale of their mobile home, where the mobile home park owner had interfered with the sale of the mobile home).
[3] Because Ethridge was entitled to all attorney's fees occurring after arbitration, and all attorney's fees incurred in connection with the MHLTA and CPA claims, the only work for which attorney's fees would not be awarded would be for work on the tortious interference claim prior to arbitration.